<hr/>

Argued 14 February; decided 22 April, 1901.

### WILLIAMS *v.* CULVER.

[64 Pac. 763.]

COMPETENT EVIDENCE OF PAYMENT—AGENT.

1. Evidence that a sum of money was given to a third person by a debtor with instructions to pay it to a creditor of the latter is not competent evidence of payment, in the absence of testimony that the third party was the agent of the creditor.

STATEMENTS BY ADMINISTRATOR BEFORE HIS APPOINTMENT.

2. Declarations by an executor or administrator made before his appointment are not competent evidence against him in his representative capacity.

IMPROPER CROSS-EXAMINATION AS FOUNDATION FOR IMPEACHMENT.

3. A cross-examination must always be confined to material matters that were stated on the direct examination or are properly connected therewith, and only such a cross-examination can be the foundation for impeachment—a cross-examination on immaterial matters or on matters not referred to on the direct examination can not be so used.

PRESUMPTION AS TO RECEIPT OF LETTER DULY MAILED.

4. Whatever may or may not be the presumption elsewhere arising from the deposit in the post office of an addressed and stamped letter, the Oregon statute (Hill's Ann. Laws, § 776, subd. 24,) provides that such an act creates a presumption of law that the letter was received in the regular course of the mail.

From Coos: HENRY L. BENSON, Judge.

39 OR.— 22.

This is an action by Jefferson Williams, administrator *de bonis non* of the estate of P. W. Williams, with the will annexed, against S. J. Culver, upon a promissory note executed by the defendant in favor of the plaintiff's intestate on August 19, 1891. The defense, in substance, is that the note was executed in Douglas County, in renewal of an old note upon which the defendant was entitled to credits for money advanced to and paid out for J. H. Williams, a son of the deceased, on account of certain litigation in Curry County in which the son was involved; but, as the amount thereof could not be ascertained at the time because the defendant's books were at his home in Curry County, one hundred miles or more distant, it was understood and agreed that the defendant should execute a new note for the amount then appearing to be due upon the old one, and that upon his return home he should make out and forward an itemized statement of his account, and the amount thereof should be deemed and considered as a payment on the note; that, in pursuance of this agreement, the note was executed, and, on the eighteenth of September, 1891, the defendant made out and forwarded by mail to the deceased an account of the credits to which he was entitled, and it was then settled and agreed that the amount thereof was $906. The plaintiff, in his reply, put in issue the allegations of the answer, and averred that the alleged settlement, if entered into at all, was induced by the fraudulent representations of the defendant, and without knowledge by the deceased of the true facts in the case. The judgment was in favor of the defendant, and the plaintiff appeals.      Reversed.

For appellant there was a brief and an oral argument by *Messrs. William R. Willis* and *Dexter Rice.*

For respondent there was a brief and an oral argument
by *Mr. S. H. Hazard.*

MR. CHIEF JUSTICE BEAN, after stating the facts, de-
livered the opinion of the court.

1.    Upon the trial the defendant called as a witness
one J. P. Tupper, who testified that in 1885, at Bandon,
in Coos County, the defendant, in his presence, gave
Judge Mosier, who was then on his way to Douglas
County, $140, with directions to deliver it to the de-
ceased.   An objection to this testimony on the ground of
incompetency was overruled, and the evidence admitted.
It seems to us clear that the objection was well taken.
There was no showing that Mosier had any authority to
collect money for the deceased, or to represent him in
matters of that kind, and so its delivery to him with
directions to pay to the deceased, without further proof,
is no evidence of such payment.   It may be suggested
that the error was harmless, since it does not appear
that the money alleged to have been so sent by Mosier
is any part of the amount for which defendant is now
claiming credit on the note in suit.   The testimony was
presumably offered for the purpose of showing that the
defendant paid to the deceased the amount of money
mentioned, and, the court having ruled that it was com-
petent, it is doubtful whether, if the case turned on this
point alone, the judgment could be affirmed on the theory
that its admission was harmless.   During the progress
of the trial the plaintiff was called as a witness in his
own behalf, and testified that he was the son of the de-
ceased, and was appointed administrator of his estate in
March, 1895 ; that he was present at the time the note
set out in the complaint was executed by the defendant,
and that it was given for the amount then due on the

old note, after deducting a credit of $530 for money forwarded to the deceased through Walter Sutton, and $170 advanced by the defendant to J. H. Williams.

2. Upon cross-examination he was asked, over the objection and exception of the plaintiff, if he did not, at a certain time and place, have a conversation with Mrs. Day, the defendant's mother, no one else being present, in which he said, in substance, that his brother, J. H. Williams, "had already got all that Sol (referring to defendant) owed his father, or almost all that Sol owed him ;" and answered that he did not have such a conversation with, or make such a statement to, Mrs. Day. The defendant thereafter called Mrs. Day as a witness, and she testified that the plaintiff came to her home some time in 1891, and, while in conversation with her concerning his brother J. H. Williams, said that they had helped him about all they intended to, and that all the defendant owed his father had been paid to him, or words to that effect. It is a well-settled rule that the declarations of an executor or administrator before his appointment are not admissible against him in his representative capacity (1 Greenleaf, Ev. [15 ed.] § 179 ; *Niskern* v. *Haydock*, 48 N. Y. Supp. 895 ; *Church* v. *Howard*, 79 N. Y. 415) ; and hence Mrs. Day's testimony was clearly incompetent as proof of declarations by the plaintiff against his interest.

3. It is argued, however, that it was competent for the purpose of impeaching the plaintiff by showing that he had made statements out of court inconsistent with his testimony ; but, before this position can be sustained, it must appear that the cross-examination of the plaintiff was proper. The cross-examination of a witness must be confined to matters stated in the direct examination,

or properly connected therewith, and material to the matter in controversy : *Ah Doon* v. *Smith*, 25 Or. 89 (34 Pac. 1093); *Sayres* v. *Allen*, 25 Or. 211 (35 Pac. 254). The cross-examination of the plaintiff in reference to his alleged conversation with Mrs. Day was in violation of this rule, and did not lay a foundation for the subsequent introduction of impeaching testimony. Moreover, it is well settled that a witness can not be cross-examined as to any fact that is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, in order thereby to discredit his testimony : *Goodall* v. *State*, 1 Or. 334 (80 Am. Dec. 396); 1 Greenleaf, Ev. (15 ed.) § 449. And, as we have already seen, any declarations the plaintiff may have made concerning the subject-matter of this litigation prior to his appointment as administrator were immaterial and irrelevant, and his cross-examination in reference thereto could not lay a foundation for the admission of proof of his declarations as impeaching testimony. It is manifest, therefore, that both the cross-examination of the plaintiff and the admission of the testimony of Mrs. Day were erroneous, and, as they bore directly on the vital questions in the case, the court can not say that they did not affect the result of the trial.

4. It is further insisted that the court was in error in charging the jury that it is a presumption of law that a letter duly directed and mailed was received in the regular course of the mail. It would seem from the authorities, generally, that depositing a letter in a post office, properly addressed and stamped, is *prima facie* proof that it was received by the person to whom it was addressed in due course of mail, but that this is an inference of fact, and not a presumption of law : 13 Am. & Eng. Ency. Law (— ed.), 260 ; *Home Ins. Co.* v. *Marple*, 1 Ind. App.

411 (27 N. E. 633); *Austin* v. *Holland*, 69 N. Y. 571 (25 Am. Rep. 246); *Sullivan* v. *Kuykendall*, 82 Ky. 483 (56 Am. Rep. 901). But our statute (Hill's Ann. Laws, § 776, subd. 24,) provides "that a letter duly directed and mailed was received in the regular course of the mail" is a presumption of law. There was therefore no error in the court so charging the jury. For the reasons given the judgment must be reversed, and the cause remanded for a new trial.    REVERSED.